UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| OLE SMOKY DISTILLERY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:19-CV-178-JRG-DCP |
| | ) | |
| KING DISTILLING CO., LLC, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the referral Order [Doc. 20] of the District Judge.

Now before the Court is Plaintiff's Motion for Entry of Default Judgment Against Defendant [Doc. 12], Defendant's Notice and Motion to Set Aside Entry of Default ("Motion to Set Aside Entry of Default") [Doc. 13], and Defendant's Notice, Motion, and Memorandum of Points and Authorities to Stay Any Further Briefing or Adjudication with Respect to Plaintiff's Motion for Entry of Default Judgment ("Motion to Stay") [Doc. 18]. Accordingly, for the reasons more fully explained below, the Court **RECOMMENDS** that Plaintiff's Motion [**Doc. 12**] be **DENIED AS MOOT**, Defendant's Motion [**Doc. 13**] be **GRANTED,** and that Defendant's Motion [**Doc. 18**] be **DENIED AS MOOT.**

**I. BACKGROUND**

The Court will begin with the allegations in the Complaint and then turn to service of process.

### A. Allegations in the Complaint

The Complaint [Doc. 1] in this matter was filed on May 16, 2019. Plaintiff alleges that it is a leading distiller of premium moonshine in the world and was the first federally licensed distillery in East Tennessee. [Doc. 1 at ¶ 1]. Plaintiff began selling its moonshine in 2009. [*Id.*]. Plaintiff has continuously used the marks OLE SMOKY MOONSHINE, OLE SMOKY TENNESSEE MOONSHINE, and other OLE SMOKY formative marks ("Ole Smoky Moonshine Marks") in connection with its distilled and related merchandise since 2010. [*Id.* at ¶ 14].

The Complaint further alleges that Plaintiff owns multiple federal trademark registrations and pending applications for the Ole Smoky Moonshine Marks covering distilled spirits and other related goods. [*Id.* at ¶ 15]. The Complaint avers that Plaintiff has expended considerable time, effort, and expense in promoting, advertising, and making well known among the purchasing public and the trade in general that its goods are offered and provided under the Ole Smoky Moonshine Marks. [*Id.* at ¶ 20]. Plaintiff advertises its products under the Ole Smoky Moonshine Marks extensively throughout the United States and East Tennessee. [*Id.* at ¶ 21]. The Complaint states that by reason of their inherent distinctiveness and continuous use, including for promotions, marketing, and advertisements, the Ole Smoky Moonshine Marks are and have become well known and famous in commerce in the United States. [*Id.* at ¶ 22]. The Complaint further alleges that Plaintiff has developed substantial common law rights in the Ole Smoky Moonshine Marks by virtue of its substantially continuous use, promotion, marketing, and advertisement of goods under the Ole Smoky Moonshine Marks. [*Id.* at ¶ 23].

The Complaint alleges that Defendant owns the mark SMOKY MOUNTAIN MOONSHINE ("Smoky Mountain Moonshine Mark"). [*Id.* at 26]. The application to register the Smoky Mountain Moonshine Mark was filed on November 15, 2018, and provides that Defendant

intends to use the Smoky Mountain Moonshine Mark in connection with distilled spirits and clothing—namely, tops, bottoms, t-shirts, and hats. [*Id.* at ¶ 27]. Defendant's planned retail location is located approximately ten (10) miles from Plaintiff's Pigeon Forge location and near one of Plaintiff's billboards featuring the Ole Smoky Moonshine Marks. [*Id.* at ¶ 35]. The Complaint avers that customers visiting Plaintiff's Pigeon Forge and Gatlinburg retail locations will pass Defendant's retail location. [*Id.*].

The Complaint continues that Plaintiff sent a letter to counsel for Defendant on December 21, 2018, advising that continued efforts to register or use the Smoky Mountain Moonshine Mark were likely to cause confusion with the Ole Smoky Moonshine Marks owned by Plaintiff. [*Id.* at ¶ 36]. Plaintiff sent a follow-up letter to counsel for Defendant on January 23, 2019, again advising that continued efforts to register and use the Smoky Mountain Moonshine Mark would cause confusion with Plaintiff's Ole Smoky Moonshine Marks. [*Id.* at ¶ 37]. The Complaint states that despite Plaintiff's warnings, Defendant has proceeded and continues to take steps to open its retail location in Sevierville under the Smoky Mountain Moonshine Mark with an awareness of Plaintiff's rights in and to the Ole Smoky Moonshine Marks and without Plaintiff's consent or authorization. [*Id.* at ¶ 41]. Plaintiff states that if Defendant opens its location in Sevierville under the Smoky Mountain Moonshine Mark, Plaintiff will be damaged by consumer confusion, brand erosion, loss of its profits, loss of goodwill, and other commercial and reputational harms. [*Id.* at ¶ 42].

The Complaint alleges Defendant's actions constitute federal trademark infringement, federal unfair competition, federal dilution, common law trademark dilution, dilution under the Tennessee Trademark Act, and unfair and deceptive acts under the Tennessee Consume Protection Act. [*Id.* at 10-15].

3

### B. Service of Process

The summons [Doc. 4] was issued on May 16, 2019. According to the proof of service, Defendant was served on June 5, 2019. [Doc. 9]. The process server wrote that he served, "Paul, the manager of the UPS Store." [*Id.* at 2].[1] Defendant did not respond to the Complaint in the time permitted under the Federal Rules. On July 9, 2019, Plaintiff filed an Application for Clerk's Default [Doc. 10], and on July 29, 2019, the Clerk entered a default [Doc. 11] against Defendant.

Plaintiff has now moved [Doc. 12] for entry of default judgment against Defendant. Defendant has requested that the entry of default [Doc. 13] be set aside. In addition, Defendant requests [Doc. 18] that briefing and adjudication of Plaintiff's Motion for Entry of Default Judgment be stayed until the Court addresses its Motion to Set Aside the Entry of Default.

## II. POSITIONS OF THE PARTIES

The Court notes that the pending Motions are all related. Because Plaintiff's Motion for Entry of Default Judgment was filed first, the Court will summarize the parties' positions with respect to this Motion, contemporaneously with Defendant's Motion to Stay. Lastly, the Court will summarize the parties' positions with respect to Defendant's Motion to Set Aside Entry of Default.

### A. Plaintiff's Motion for Entry of Default Judgment and Defendant's Motion to Stay

Plaintiff moves [Doc. 12] for entry of default judgment, arguing that Defendant is already in default. Plaintiff argues that its well-pleaded factual allegations in the Complaint properly allege the elements for each of its claims in the Complaint. Plaintiff states that the default judgment should also include an order and declaration that the use of the Smoky Mountain Moonshine Mark

---

[1] Defendant acknowledges that it listed this UPS store address as its registered agent with the Tennessee Secretary of State.

4

Case 3:19-cv-00178-TAV-DCP  Document 24   Filed 12/30/19   Page 4 of 15   PageID #: 215

by Defendant as laid out in the Complaint has infringed and would continue to infringe on Plaintiff's rights in and to the Ole Smoky Moonshine Marks. Plaintiff also requests a permanent injunction pursuant to the Lanham Act.

Defendant responds [Doc. 22] in opposition to the Motion. Defendant states that it has already requested that the entry of default be set aside, and it incorporates its arguments set forth in its Motion to Set Aside Entry of Default. Defendant argues that the standard of good cause pursuant to Federal Rule of Civil Procedure 55(c) is applicable and argues that the factors the Court must consider weigh in favor of setting aside the entry of default. Defendant also requests [Doc. 18] that the Court stay any further briefing or adjudication with respect to Plaintiff's Motion, asserting that the Court has discretion in determining the order in which matters are considered. Defendant requests that the Court rule on its Motion to Set Aside Entry of Default prior to Plaintiff's Motion for Entry of Default Judgment.

Plaintiff states that Defendant has not shown good cause [Doc. 21] for granting its Motion to Stay. Plaintiff argues that Defendant has already had more than fifty (50) days beyond the time Defendant's answer was originally due. Plaintiff maintains that the entry of default should not be set aside and that Defendant should not be allowed any additional time to further delay these proceedings with procedural motions.

### B. Defendant's Motion to Set Aside Entry of Default

Defendant requests [Doc. 13] that the entry of default be set aside. In support of its position, Defendant relies on the Declaration of Kyle Spurlock [Doc. 14], its managing member. Spurlock's Declaration states as follows:

Defendant filed a United States trademark application on November 15, 2018, with the help of an attorney, Paul Kruse. [*Id.* at ¶ 3]. Later, on December 21, 2018, Plaintiff's attorney,

5

Michael Robinson, sent Kruse a letter, which objected to Defendant's trademark application. [*Id.* a ¶ 4]. Kruse responded to Robinson's letter, denying Plaintiff's claims of infringement. [*Id.*]. Kruse also pointed out that the United States Patent and Trademark Office ("USPTO") twice refused to allow Plaintiff to register the words, "Smoky Mountain Moonshine," with no design or stylized lettering for distilled spirits on the grounds that the words were too descriptive of the goods and their geographic origin. [*Id.*]. Defendant's application was approved by the USPTO and published for opposition on March 13, 2019. [*Id.* at ¶ 5]. Plaintiff commenced an opposition proceeding in the USPTO's Trademark Trial and Appeal Board. [*Id.*].

Spurlock states that on May 16, 2019, he received an unsolicited email from an attorney with a firm in Wisconsin, informing Spurlock that his company had been named as a defendant in a trademark lawsuit in East Tennessee. [*Id.* at ¶ 7]. Spurlock states that this was his first knowledge of any potential trademark infringement lawsuit and that he called Kruse about the email and forwarded him a copy. [*Id.*]. Kruse checked the Court's website and found that a lawsuit had been filed. [*Id.* at ¶ 8]. Kruse sent Spurlock a copy of the Complaint. [*Id.*]. Spurlock states that from May 16 to May 28, he and Kruse exchanged communications about how to respond. [*Id.* at ¶ 9]. Spurlock states that to his knowledge, Defendant had not been served at that time. [*Id.*].

On June 21, 2019, Plaintiff's counsel sent Kruse a courtesy copy of the Complaint, stating that it had been served on Defendant on June 5, 2019, at its address at 5543 Edmundson Pike, Nashville, Tennessee 37211-5808, which is listed on the Secretary of State's website. [*Id.* at ¶ 10]. Kruse informed Robinson that he and Defendant were still deliberating on whether Kruse would represent Defendant in the ligation and Kruse sought an additional seven days to respond to the Complaint, which Robinson agreed. [*Id.*].

Spurlock states that in light of the above communications, he called the manager of the UPS Store on or about June 29, 2019. [*Id.* at ¶ 11]. Spurlock asked the manager if he had received any certified or registered mail deliveries for Defendant in the recent weeks because Spurlock thought that the Complaint would have been delivered by certified or registered mail to the UPS address. [*Id.*]. Spurlock explains that he had been traveling to East Tennessee extensively during this time and was not able to frequently check for registered or certified mail received at the mailbox. [*Id.*]. The UPS store manager stated that he had no recollection of receiving any registered or certified mail deliveries for Defendant, but he would check and call Spurlock back if he found a registered or certified mail delivery. [*Id.*]. Spurlock did not receive a call back from the UPS manager. [*Id.* at ¶ 12].

On July 9, 2019, Kruse informed Spurlock that Robinson had forwarded Kruse a copy of the motion for entry of default. [*Id.* at ¶ 13]. On July 20, 2019, Spurlock went to the UPS store and found in the mail a plain, letter-sized envelope bearing Spurlock's name and part of Defendant's address crudely written by hand on the outside. [*Id.* at ¶ 14]. Inside the envelope was a copy of the summons and a complaint. [*Id.*]. Spurlock discussed the motion, and later the entry of default with Kruse, and because Kruse would not commit to representing Defendant in court, Defendant searched for other counsel, ultimately retaining present defense counsel on August 12, 2019. [*Id.* at ¶ 16].

Defendant's Motion to Set Aside Entry of Default [Doc. 13] was filed on August 15, 2019. Defendant argues that Federal Rule of Civil Procedure 55(c) applies to the current proceedings, given that Plaintiff has requested, but not received, a default judgment. Defendant asserts that granting its Motion will not unduly prejudice Plaintiff. Defendant states that Plaintiff is not seeking any preliminary or other extraordinary relief in this matter. Further, Defendant claims that

it has meritorious defenses, including (1) denying all Plaintiff's allegations, (2) Defendant has not commenced the use of the challenged Smoky Mountain Moonshine Mark, (3) even if it had commenced using the Smoky Mountain Moonshine Mark, there is no likelihood of confusion, mistake, or deception as to the source of any goods/services it may have offered, and (4) any use of the Smoky Mountain Moonshine Mark is a fair use of geographic and otherwise descriptive words pursuant to 15 U.S.C. § 1115(b)(b). Finally, Defendant states that Spurlock was confused about how service should have been made and was on the lookout for the receipt of a certified or registered mail package. Defendant states that once Spurlock learned of the service of process, he contacted Kruse and when he could not obtain Kruse's commitment, he sought other counsel.

Plaintiff responds [Doc. 21] in opposition to Defendant's request, stating that Defendant has failed to establish good cause. Plaintiff argues that Defendant's default was willful. Plaintiff states that Defendant has had more than adequate notice of the action, becoming aware of the filing of the Complaint on May 16, 2019, being served on June 5, 2019, having the Complaint sent to Kruse on June 21, 2019, and having been mailed Plaintiff's request for entry of default on July 9, 2019, which was also emailed to Kruse. Plaintiff argues that Defendant offers no credible explanation or excuse for its default and that it appears Defendant tried to thwart service of the Complaint. Plaintiff states that Defendant improperly used a temporary mailbox as its registered agent and that it waited over fifty (50) days after its answer was due to file anything with the Court, despite receiving multiple communications about the lawsuit. Plaintiff states that it will be prejudiced if the default were set aside because the proceedings have been delayed and it has been burden with legal fees. Finally, Plaintiff states that Defendant has not established meritorious defenses. Plaintiff argues that it has superior rights to the Ole Smoky Moonshine Marks and that Defendant is attempting to ride on the coattails of Plaintiff's goodwill. Plaintiff states that should

8

the default be set aside, it should be conditioned on the payment of fees incurred as a result of Defendant's actions.

Defendant filed a Reply [Doc. 22], maintaining that the entry of default should be set aside.[2] Further, Defendant argues that Plaintiff's requests for fees should be denied. Defendant asserts that it did not deliberately evade service and that Plaintiff's argument would convert the granting of a Rule 55(c) motion into a fee-shifting mechanism.

## III. ANALYSIS

The Court has considered the positions outlined in the parties' briefs, and the Court **RECOMMENDS** that that the entry of default be set aside, and therefore, the remaining motions be denied as moot.

Rule 55 governs motions to set aside an entry of default. Specifically, Rule 55(c) provides, "The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)))." The parties dispute the order in which the Court should consider the Motions. The order is important because the standard to set aside an entry of default is more lenient than the standard to set aside a default judgment. *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 840 (6th Cir. 2011). Although Plaintiff has filed a Motion for Entry of Default Judgment, the Motion is opposed, and a default judgment has not been entered. *Jack Tyler Eng'g Co. v. Colfax Corp.*, No. 10-2373-STA, 2011 WL 1256610, at *2 (W.D. Tenn. Mar. 31, 2011) (addressing defendant's motion to set aside the default, despite plaintiff's pending motion for default judgment, explaining that a "Rule 55(c) motion appears to be the correct procedure where the Clerk of Court has entered default but before the Court has entered default judgment").

---

[2] In a footnote, Defendant states that it does not waive its right to challenge the sufficiency of service. *See* [Doc. 22 at 9 n. 4]. Defendant, however, does not raise this argument as a basis to set aside the default.

9

Given the current procedural posture (i.e., default judgment has not been entered), the Court finds that the more lenient, good cause standard in Rule 55(c) is applicable. *See Dassault Systemes*, 663 F.3d at 839 (explaining that a default judgment means that the "court has determined damages and a judgment has been entered") (quoting *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992)). In considering whether good cause exists to set an entry of default aside, the Court must consider three factors: (1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether the culpable conduct of the defendant led to the default. *United Coin Meter Co. v. Seaboard Coastline RR.*, 705 F.2d 839, 845 (6th Cir. 1983).

The Court will address these factors separately and then turn to Plaintiff's request for costs.

### 1. Prejudice

First, courts have explained that the "prejudice inquiry focuses on 'the future prejudice that will result from reopening the judgment, not prejudice that has already resulted from defendant's conduct.'" *Hernandez v. Telelink, LLC*, No. 4:18CV2203, 2019 WL 5086128, at *2 (N.D. Ohio Oct. 10, 2019) (quoting *Dassault Systemes*, 663 F.3d at 842). For instance, a delay in the proceedings will not be considered prejudicial unless it results "in the loss of evidence, create[s] increased difficulties of discovery, or provide[s] greater opportunity for fraud and collision. *Id.* (quoting *Dassault Systemes*, 663 F.3d at 842) (other quotations omitted).

The Court finds that this factor weighs in favor of setting aside the default. Here, Plaintiff argues that Defendant's actions have resulted in a delay of the proceedings and increased costs. The Court finds, however, that delay and increased costs, alone, do not support a denial of setting aside a default. *Hernandez,* 2019 WL 5086128, at *2 (N.D. Ohio Oct. 10, 2019) ("Neither delay nor increased litigation costs support denial of setting aside default judgment."). Plaintiff does

10

Case 3:19-cv-00178-TAV-DCP Document 24 Filed 12/30/19 Page 10 of 15 PageID #: 221

not argue that Defendant's actions have caused a loss of evidence, increased difficulties with discovery, or created greater opportunity for fraud and collision. Further, the Court has reviewed the procedural posture of this case and finds that Plaintiff will not be prejudiced by proceeding in this matter. The Court notes that the entry of default was entered on July 29, 2019, and Defendant requested that the default be set side approximately two weeks later and included a proposed answer. Accordingly, the Court finds that this factor weighs in favor of setting aside the entry of default.

### 2. Meritorious Defense

With respect to the second factor—that is, whether Defendant has a meritorious defense, the Sixth Circuit has explained, "A defense is meritorious if it is good at law." *Dassault Systemes*, 663 F.3d at 843 (quoting *United States v. $22,050.00 U.S. Currency*, 595 F.3d 318, 326 (6th Cir. 2010)) (internal quotation marks omitted). Defendant "does not need to demonstrate that the defense is likely to succeed on the merits. Rather, the inquiry is whether 'there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.'" *Hernandez,* 2019 WL 5086128, at *3 (quoting *$22,050.00 U.S. Currency*, 595 F.3d at 326) (other quotations omitted). "[C]onclusory assertions may be sufficient to establish the 'hint of a suggestion' needed to present a meritorious defense." *Dassault Systemes*, 663 F.3d at 843.

Plaintiff asserts that it is clear from the evidence that it has superior rights to the Ole Smoky Moonshine Mark and that Defendant is a newcomer attempting to ride on Plaintiff's coattails. The Court, however, finds that Defendant has raised meritorious defenses. As Defendant argues, it has not commenced the use of the Smoky Mountain Moonshine Mark. Further, Defendant states that even if it had commenced such use, there is no likelihood of confusion, mistake, or deception as to the source of any goods and services it may have offered under the Smoky Mountain Moonshine

11

Mark. Finally, Defendant contends that any use of the Smoky Mountain Moonshine Mark is a fair use of geographic and otherwise descriptive words pursuant to 15 U.S.C. § 1115(b)(4). *See $22,050.00 U.S. Currency*, 595 F.3d at 325 ("All that matters is whether a well-stated defense, if sustained would change the outcome."). Accordingly, the Court finds that this factor weighs in favor of setting aside the default.

### 3. Defendant's Culpability

The final factor is whether Defendant's culpability led to the default. Courts have further explained this factor as follows: "To be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Hernandez*, 2019 WL 5086128, at *3 (quoting *Dassault Systemes*, 663 F.3d at 841). Defendant's culpability is also considered "in the general context of determining whether a [defendant] is deserving of equitable relief." *Krowtoh II LLC v. ExCelsius Int'l Ltd*, 330 F. App'x 530, 536 (6th Cir. 2009) (other quotations omitted).

While the Court finds that this factor is a close call, the undersigned ultimately finds it weighs in favor of setting aside the default.[3] Plaintiff is correct in that Defendant was aware of the lawsuit since May 2019. The issue, however, is that Defendant did not believe it had been served with process at that time. On June 21, 2019, Plaintiff's counsel told Kruse that Defendant had been served on June 5, 2019. About a week letter, Spurlock called the UPS store and asked whether Defendant had received any certified letters. The store clerk stated that Defendant had not. Subsequently, on July 9, 2019, Kruse informed Spurlock about a motion for entry of default.

---

[3] Even if this factor weighed in Plaintiff's favor, the Court would still recommend that the entry of default be set aside given the strength of the first two factors. *Marbly v. Dep't of Treasury*, 22 F. App'x 371, 372 (6th Cir. 2001) ("In fact, a district court abuses its discretion in denying a motion to set aside an entry of default when the first two factors favor setting aside the entry.") (other citations omitted).

12

Approximately a week later, Spurlock went to the UPS store and found an envelope containing a copy of the summons and the Complaint. Spurlock discussed the entry of default with Kruse and then commenced searching for counsel when Kruse would not commit to representation in court. The entry of default was ultimately entered on July 29, 2019, and Defendant moved to set it aside approximately two weeks later.

While the Court finds that this factor weighs slightly in Defendant's favor, the Court emphasizes that Defendant is not blameless and should have acted with more urgency. However, the Court does not find that Defendant intended to thwart judicial proceedings or that Defendant's conduct was reckless. *See Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 195 (6th Cir. 1986) ("Where the party in default satisfies the first two requirements for relief and moves promptly to set aside the default before a judgment is entered, the district court should grant the motion if the party offers a credible explanation for the delay that does not exhibit disregard for the judicial proceedings."). Accordingly, the Court finds that all three factors weigh in favor of setting aside the default, and therefore, the Court **RECOMMENDS** that the entry of default be set aside. *See id.* (noting the "strong policy in favor of deciding cases on their merits").

### 4. Costs

Plaintiff requests that if the default is set aside, that it be awarded with the fees incurred as a result of Defendant's actions, including expenses incurred in preparing an application for entry of default, its motion for default judgment and responding to Defendant's motion to set aside default, and any further work related to the above.

"The Sixth Circuit has recognized a district court's inherent power to impose monetary sanctions when setting aside a default under [Rule 55(c)]." *Tubbs v. ABC Prof'l Tree Serv. Inc.*, No. 3:14-CV-01783, 2015 WL 3511219, at *6 (M.D. Tenn. June 4, 2015) (citing *Shepard Claims*,

796 F.2d at 195) (noting that setting aside default "does not preclude the district court from assessing or determining some appropriate penalty or sanction against the defendant or his counsel for the delay occasioned by the careless and inexcusable conduct of defendant's counsel").

Although the Court concludes that Defendant's conduct does not justify an entry of default, such conduct does warrant some sanction because Defendant's actions in this case needlessly increased Plaintiff's costs. *See Prime Rate Premium Fin. Corp. v. Larson*, No. 14-12397, 2019 WL 1584557, at *1 (E.D. Mich. Apr. 12, 2019) ("The Court, however, conditioned the setting aside of the defaults and default judgment upon the payment of fees and costs and allowed the plaintiff to submit an affidavit outlining the expenses incurred related to these motions."); *Welch v. Cerda*, No. 15-10392, 2015 WL 7253015, at *2 (E.D. Mich. Nov. 16, 2015) ("The Court will condition the setting aside of the default on the defendant's prompt payment to the plaintiff of costs in a reasonable amount relating to the plaintiff's filing of the motion for default judgment, which were incurred as a result of the defendant's tardy action."); *Tubbs,* 2015 WL 3511219, at *6 (granting defendant's motion to set aside default on the condition that defendant pay plaintiff's reasonable attorney's fees and expenses incurred in preparing the application for entry of default, the motion for default judgment, and the response in opposition to defendant's motion to set aside default); *Bros. Gas & Food v. Catlin Specialty Ins. Co.*, No. 13-CV-13061, 2014 WL 106783, at *5 (E.D. Mich. Jan. 10, 2014) (granting motion to set aside entry of default but finding that "it is wholly appropriate that [plaintiff] be properly compensated for the reasonable costs and fees incurred in obtaining the Clerk's entry of default and in preparing its motion for default judgment"); *Winslow v. Kalamazoo Pub. Sch., No.* 1:07-CV-65, 2007 WL 1701796 (W.D. Mich. June 11, 2007) (a district court "has authority to condition

14

Case 3:19-cv-00178-TAV-DCP   Document 24   Filed 12/30/19   Page 14 of 15
PageID #: 225

the setting aside of a default upon payment of attorney's fees and costs under Fed. R. Civ. P. 55(c)").

Based on the above, the Court **RECOMMENDS** that the parties be given time in which to agree to the amount due to Plaintiff for its costs and attorney's fees incurred in the filing of Plaintiff's application for a default, Plaintiff's Motion for Default Judgment, and the filings related to Defendant's Motion to Set Aside Entry of Default and Motion to Stay. If the parties cannot agree, the Court **RECOMMENDS** Plaintiff be given time to file an itemization of the costs and attorneys' fees for consideration by the Court.

## IV. CONCLUSION

Accordingly, given that the undersigned **RECOMMENDS**[4] that the Motion to Set Aside Entry of Defendant [**Doc. 13**] be **GRANTED**, the Court finds it unnecessary to address the remaining Motions. The Court **RECOMMENDS** that Plaintiff's Motion for Entry of Default Judgment [**Doc. 12**] and Defendant's Motion to Stay [**Doc. 18**] be **DENIED AS MOOT** and that Defendant pay for the costs and attorney's fees as outlined above**.**

Respectfully submitted,

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).