UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| OLE SMOKY DISTILLERY, LLC, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 3:19-CV-178-TAV-DCP |
| KING DISTILLING CO., LLC, | ) ) ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the referral Orders [Docs. 50, 57, and 64] of the District Judge.

Now before the Court are the following Motions: (1) Plaintiff's Motion for Default Judgment [Doc. 48], (2) Defendant's Motion to Set Aside Default [Doc. 52], (3) Defendant's Amended Motion to Set Aside Default ("Amended Motion") [Doc. 53], and (4) Defendant's Motion to Pay Attorney Fees By Installments [Doc. 61]. The Motions are ripe for adjudication.

Accordingly, for the reasons stated below, the Court **RECOMMENDS** that Plaintiff's Motion [**Doc. 48**] be **DENIED AS MOOT**, Defendant's Motion to Set Aside Default [**Doc. 52**] be **DENIED AS MOOT**, Defendant's Amended Motion be **GRANTED** [**Doc. 53**], and Defendant's Motion to Pay Attorney Fees By Installments [**Doc. 61**] be **GRANTED IN PART AND DENIED IN PART.**

I. PROCEDURAL BACKGROUND

The Complaint [Doc. 1] in this case was filed on May 16, 2019. In summary, the Complaint alleges that Defendant plans to open a distillery named "Smoky Mountain Moonshine" near Plaintiff's distilleries, selling distilled spirits and merchandise using the mark, SMOKY

MOUNTAIN MOONSHINE ("Smoky Mountain Moonshine Mark"). [Id. at ¶ 5]. Plaintiff states that it has continuously used the marks OLE SMOKY MOONSHINE, OLE SMOKY TENNESSEE MOONSHINE, and other OLE SMOKY formative marks (collectively, "Ole Smoky Moonshine Marks") in connection with its distilled spirits and related merchandise since 2010. [Id. at ¶ 14]. Plaintiff alleges that Defendant's plans to open a distillery and sell merchandise using the Smoky Mountain Moonshine Mark constitutes federal trademark infringement, federal unfair competition, federal dilution, common law trademark dilution, dilution under the Tennessee Trademark Act, and unfair and deceptive acts under the Tennessee Consume Protection Act. [Id. at 10-15].

Defendant did not respond to the Complaint in the time permitted pursuant to Federal Rule of Civil Procedure 4. On July 9, 2019, Plaintiff filed an application for Clerk's default [Doc. 10], and on July 29, 2019, the Clerk entered a default [Doc. 11] against Defendant. On August 14, 2019, Plaintiff moved for a default judgment against Defendant.

On August 15, 2019, Defendant, through its former counsel, Mark Graham, filed a motion to side aside the default. The parties engaged in a healthy motion practice regarding Plaintiff's motion for default judgment and Defendant's motion to set aside the default. On December 30, 2019, the undersigned entered a Report and Recommendation [Doc. 24], recommending that Defendant's motion to set aside the default be granted and that Plaintiff's motion for default judgment be denied as moot but that Plaintiff be awarded the costs and attorney's fees associated with the parties' filings. On March 10, 2020, the District Judge adopted and approved [Doc. 31] the Report and Recommendation. Thereafter, the undersigned ordered the parties to meet and confer to determine whether they could agree to a reasonable amount of attorney's fees that were due. [Doc. 32]. The Court further instructed Plaintiff to file an itemization of its attorney's fees

and costs, if the parties could not agree on a reasonable amount. [*Id.*]. The parties could not agree, and therefore, Plaintiff filed its itemization for the Court's consideration. Defendant did not respond to Plaintiff's itemization, and on May 4, 2020, the Court awarded Plaintiff $9,146.00 in attorney's fees. [Doc. 36].

On the following day, May 5, 2020, Attorney Graham moved to withdraw from representing Defendant in this matter. [Doc. 37]. Over the course of two months, the Court held multiple status conferences regarding the motion to withdraw. *See* [Docs. 41, 42, 44]. On July 28, 2020, the Court allowed Attorney Graham to withdraw given that he explained the extraordinary circumstances for his request (i.e., Attorney Graham had been temporarily suspended from practicing law) and because Defendant was involved in discussions to retain new counsel. The Court entered an Order on July 28, 2020, stating, "Defendant **SHALL** have fourteen (14) days from entry of this Order to obtain new counsel and have new counsel enter an appearance on its behalf." [Doc. 45] (Emphasis in original). Thus, Defendant had until August 11, 2020, to obtain counsel.

Defendant did not obtain counsel by August 11, 2020. On the following day, August 12, 2020, Plaintiff moved for entry of default because Defendant had not obtained new counsel, and therefore, had failed to defend the action. [Doc. 46]. The Clerk entered a default [Doc. 47] against Defendant on September 2, 2020. On September 3, 2020, Plaintiff filed its Motion for Default Judgment [Doc. 49]. Later, on September 18, 2020, Attorney Thomas Leveille filed a Notice of Appearance [Doc. 51] on behalf of Defendant, a Motion to Set Aside Default [Doc. 52], and the Amended Motion [Doc. 53].

On November 25, 2020, the Court entered an Order, noting that Defendant had not satisfied the Court-ordered sanctions, stating as follows:

3

> The Court is deeply concerned by Defendant's failure to comply with Court Orders, and before the Court addresses the outstanding motions in this matter, the Court must have some assurances that Defendant will satisfy the outstanding award of attorney's fees, as well as any additional fees the Court might award to Plaintiff for the expenses it incurred in having to move for default judgment for a second time.

[Doc. 59 at 2]. The Court ordered the parties to meet and confer to discuss the amount of attorney's fees awarded and Defendant's ability to satisfy the Court's prior award, as well as any additional fees that may be imposed in relation to the most recent default litigation, either via lump sum payment or payment plan. [*Id.*].

The parties filed a Joint Status Report as directed. [Doc. 60]. The Joint Status Report states that the Court awarded attorney's fees to Plaintiff in the amount of $9,146.00 and that Defendant has not paid Plaintiff. With respect to the most recent filings related to Defendant's default, Plaintiff submitted an invoice to defense counsel setting forth the additional fees incurred. The parties disagree as to whether Defendant should pay in a lump sum versus a payment plan.

Plaintiff seeks an immediate lump sum payment in the amount of $9,146.00 for Defendant's original default. In addition, Plaintiff seeks interest on the previous awarded amount (i.e., $1,570 compounded monthly at 2%) through January 4, 2021, as well as the new attorney's fees incurred in the amount of $6,479.60 for the current default. Thus, Plaintiff seeks a total amount of $17,195.60. Plaintiff states that the interest and the most recent incurred attorney's fees should be paid within thirty (30) days. On the other hand, Defendant conveyed a proposal to Plaintiff of $1,000.00 per month to satisfy the Court's prior award of attorney's fees, as well as any additional fees that may be imposed in relation to the most recent default litigation.

Given the above background, the Court will turn to the issues presented.

## II. ANALYSIS

The Court has carefully considered the history of this case, along with the current filings. Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion [**Doc. 48**] be **DENIED AS MOOT**, Defendant's Motion to Set Aside Default [**Doc. 52**] be **DENIED AS MOOT**, Defendant's Amended Motion be **GRANTED** [**Doc. 53**], and Defendant's Motion to Pay Attorney Fees by Installments [**Doc. 61**] be **GRANTED IN PART AND DENIED IN PART.**

Unfortunately, this case is in the same posture as it existed in 2019. Plaintiff has requested a default judgment, and Defendant has requested that the entry of default be set aside. The Court will first address the Motions relating to Defendant's default and Plaintiff's request for a default judgment and then turn to the issues regarding the award of attorney's fees.

### A. Entry of Default and Default Judgment

As this Court previously explained, Rule 55 governs motions to set aside entries of default. Specifically, Rule 55(c) provides, "The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)))." Although Plaintiff has filed a Motion for Entry of Default Judgment, the Motion is opposed, and a default judgment has not been entered. Given the current procedural posture, the Court again finds that the good cause standard in Rule 55(c) is applicable. *See Dassault Systemes, SA v. Childress*, 663 F.3d 832, 839 (6th Cir. 2011) (explaining that a default judgment means that the "court has determined damages and a judgment has been entered") (quoting *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992)). In considering whether good cause exists to set an entry of default aside, the Court must consider three factors: (1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether the culpable conduct of the defendant led to the default. *United Coin Meter Co. v. Seaboard Coastline RR.*, 705 F.2d 839, 845 (6th Cir. 1983).

In support of its position that the Court should not enter a default judgment and instead set aside the entry of default, Defendant filed the Declaration of Kyle Spurlock ("Spurlock"), Defendant's President. [Doc. 53-1]. Spurlock acknowledges that Defendant was required to retain counsel within fourteen (14) days of July 28, 2020. Spurlock claims, however, that he did not have actual knowledge of the deadline, although he concedes that he should have been aware. Spurlock continues that he was culpable in not obtaining new counsel by the deadline but states that the level of culpability does not display an intent to thwart judicial proceedings or a reckless disregard thereof. Finally, Spurlock claims that Defendant has asserted a meritorious defense and that there will be no prejudice to Plaintiff for setting aside the default.

The Court will address the factors separately.

### 1. Prejudice

The Court explained the law governing prejudice in its previous Report and Recommendation [Doc. 24]. Specifically, the "prejudice inquiry focuses on 'the future prejudice that will result from reopening the judgment, not prejudice that has already resulted from defendant's conduct.'" *Hernandez v. Telelink, LLC*, No. 4:18CV2203, 2019 WL 5086128, at *2 (N.D. Ohio Oct. 10, 2019) (quoting *Dassault Systemes*, 663 F.3d at 842). For instance, a delay in the proceedings will not be considered prejudicial unless it results "in the loss of evidence, create[s] increased difficulties of discovery, or provide[s] greater opportunity for fraud and collision. *Id.* (quoting *Dassault Systemes*, 663 F.3d at 842) (other quotations omitted).

The Court finds that this factor weighs in favor of setting aside the entry of default. First, Plaintiff asserts that Defendant's delay has caused it to incur significant costs. The Court does not find that Plaintiff's increased costs constitute prejudice to the extent default judgment should be entered. *See Hernandez*, 2019 WL 5086128, at *2 (explaining that the inquiry is on the future

6

prejudice, not the prejudice that has already resulted) (other citations omitted). In addition, the Court has awarded Plaintiff its incurred costs for the delay.

In addition, Plaintiff asserts that setting aside the default will prejudice it because Defendant's actions have likely increased difficulties with discovery. Plaintiff states that, for example, in its Complaint, it identified concrete and tangible steps Defendant took toward using the Smoky Mountain Moonshine Mark, but now Defendant claims that it has no plans to use the Smoky Mountain Moonshine Mark in the near future. Plaintiff argues that discovery will now be more difficult as there is a risk of losing evidence regarding Defendant's intent to commence using the Smoky Mountain Moonshine Mark. The Court disagrees.

Specifically, the Court notes that Plaintiff filed its Complaint, in part, to bar Defendant from using the Smoky Mountain Moonshine Mark. Defendant now states that it does not intend to use the Smoky Mountain Moonshine Mark in the near future. It is not clear to the Court how Defendant's failure to use the Smoky Mountain Moonshine Mark at the current time prejudices Plaintiff or constitutes a risk of losing evidence. Should this case proceed, Plaintiff may ask Defendant during discovery when, or if, it intends to use the Smoky Mountain Moonshine Mark and whether its intentions have changed since the filing of the Complaint.

Finally, Plaintiff states that the parties are also currently engaged in an opposition proceeding before the Trademark Trial and Appeal Board, wherein Plaintiff has filed a Notice of Opposition to Defendant's Smoky Mountain Moonshine trademark application. Plaintiff states that the proceedings were suspended pending disposition of this litigation. The Court finds, however, that Plaintiff has not sufficiently explained how the stayed proceedings constitutes prejudice other than delay. *See Krowtoh II LLC v. ExCelsius Int'l Ltd*, 330 F. App'x 530, 535 (6th Cir. 2009) (concluding that plaintiff failed to establish that it would be prejudiced by setting aside

the entry of default because plaintiff had not shown that evidence was lost, or that it would have any increased difficulties obtaining relevant discovery); *see Beamer v. Fadel-II Foods*, No. 10-CV-10104, 2012 WL 1068708, at *4 (E.D. Mich. Mar. 29, 2012) (explaining that while "a significant amount of time has passed, neither delay nor increased litigation cost constitute prejudice without a showing that the delay will result in the loss of evidence or increased difficulties concerning discovery"). Accordingly, the Court finds that this factor weighs in Defendant's favor.

### 2. Meritorious Defense

As previously explained, *see* [Doc. 24], "a defense is meritorious if it is good at law." *Dassault Systemes*, 663 F.3d at 843 (quoting *United States v. $22,050.00 U.S. Currency*, 595 F.3d 318, 326 (6th Cir. 2010)) (internal quotation marks omitted). Defendant "does not need to demonstrate that the defense is likely to succeed on the merits. Rather, the inquiry is whether 'there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.'" *Hernandez,* 2019 WL 5086128, at *3 (quoting *$22,050.00 U.S. Currency*, 595 F.3d at 326) (other quotations omitted). "[C]onclusory assertions may be sufficient to establish the 'hint of a suggestion' needed to present a meritorious defense." *Dassault Systemes*, 663 F.3d at 843.

Plaintiff argues that it is clear from the evidence on record that it has superior rights to its Ole Smoky Moonshine Mark based on its prior federal trademark registrations and common law use of its marks. Plaintiff argues that Defendant's defenses that its use of the Smoky Mountain Moonshine Mark is merely descriptive or constitutes fair use are directly inconsistent with Defendant's efforts to obtain exclusive trademark rights with the United States Patent & Trademark Office.

The Court has considered Plaintiff's arguments but finds them not well taken. Defendant states that it has raised several defenses and affirmatives defenses, including: (1) Defendant has not used the Smoky Mountain Moonshine Mark, and therefore, no infringement has occurred, (2) Defendant was not using the name containing the words, "smoky mountain moonshine," and (3) any use of the Smoky Mountain Moonshine Mark or the words "smoky mountain moonshine" will not cause confusion, mistake, or deception as to the source of the goods. *See* [Doc. 53-1 at ¶ 12]. In addition, Spurlock sets forth in his Declaration the following:

> From a lay person's perceptive, certain (but not all) of the facts supporting the defenses are that (a) King Distilling is not currently using the trademark in commerce; (b) there is no factual basis for the trademark to cause any confusion with the trademark alleged to be owned by the Plaintiff; (c) the trademark describes the goods and their geographic original; and (d) the trademark of the Defendant is distinctive in relation to the trademarks of the Plaintiff.

[*Id.* at ¶ 14]. Accordingly, the Court finds, for purposes of the instant matter, that Defendant has set forth meritorious defenses.

### 3. Defendant's Culpability

The final factor is whether Defendant's culpability led to the default. Courts have further explained this factor as follows: "To be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Hernandez*, 2019 WL 5086128, at *3 (quoting *Dassault Systemes*, 663 F.3d at 841). Defendant's culpability is also considered "in the general context of determining whether a [defendant] is deserving of equitable relief." *Krowtoh II*, 330 F. App'x at 536.

As mentioned above, Spurlock concedes that he was culpable in not obtaining new counsel by the deadline but argues that the level of culpability does not display an intent to thwart judicial proceedings or a reckless disregard for the effect of such conduct on the proceedings. Pursuant to

9

Spurlock's Declaration, he states that he became generally aware that Attorney Graham had some issues relating to his law license, although Spurlock is unaware of the significant details. [Doc. 53 at 5]. Spurlock states that with Attorney Graham's assistance, Spurlock initiated discussions with other attorneys to take over Defendant's representation in this lawsuit. [*Id.* at ¶ 6]. Spurlock states that he had communications with several attorneys, including Andrew Farmer, Steven Marshall, and his current counsel, Thomas Leveille. [*Id.*]. Spurlock further states that Andrew Framer and Steve Marshall both initially indicated that they were willing to provide representation but later advised that they had conflicts and could not become involved. [*Id.*]. Spurlock states that he also discussed the matter with an attorney in Sevierville, Tennessee, but the attorney acted hesitant to take the case after learning the name of Plaintiff. [*Id.*]. Spurlock states that he ultimately retained Attorney Leveille on September 17, 2020. [*Id.*].

Plaintiff argues that Defendant admitted that it was aware of the deadline to retain new counsel and that it failed to take any steps to appear or otherwise defend this action for a second time. Plaintiff argues that Defendant fails to provide any credible explanation for its failure to timely participate in the litigation. Plaintiff argues that Defendant knew in April 2020 that it would need to retain new counsel, and Plaintiff summarizes the telephonic conferences the undersigned conducted with the parties. Plaintiff argues that Defendant willfully failed to appear or otherwise defend this action despite being provided ample time to do so. Plaintiff also argues that this is the second time that default has been entered against Defendant and that Defendant's conduct constitutes reckless disregard for these proceedings.

The Court has carefully considered the procedural history of this case along with Defendant's reason for not obtaining counsel by the Court's deadline. After such consideration, the Court finds this factor weighs slightly in Defendant's favor. The Court notes that the

10

Case 3:19-cv-00178-TAV-DCP Document 67 Filed 07/21/21 Page 10 of 15 PageID #: 455

circumstances causing Defendant's former counsel to withdraw were beyond Defendant's control. As the Court noted in its previous Order, the Tennessee Supreme Court temporarily suspended Defendant's former counsel from practicing law. While the undersigned provided Defendant with sufficient time to retain new counsel, and Defendant did not do so by the deadline, Spurlock explains that he contacted several attorneys who declined to take his case. Given Defendant's efforts to retain counsel, and ultimately succeeding at retaining counsel, the Court finds such successful efforts warrant proceeding with this case. Stated in a different way, the Court does not find Defendant's untimeliness in retaining an attorney constitutes an attempt to thwart judicial proceedings or show reckless disregard thereof. Given that the Court recommends granting Defendant's Amended Motion, the Court recommends denying Plaintiff's Motion for Default Judgment [Doc. 48] as moot.

Finally, while the Court recommends that the default be set aside, the Court does not find Defendant's conduct should be without consequences. This is the second time that the Clerk has entered a default against Defendant. In addition, this is the second time that Spurlock claims to have missed his mail. *See* [Doc. 24 at 7]. For instance, here, Spurlock states, "I am aware that the Order [permitting withdrawal] was apparently mailed to my address by the Clerk of the Court[,] but it either did not arrive or for some reason I did not see it." [Doc. 53-1 at ¶ 8].[1] Accordingly, the Court recommends that Defendant be responsible for Plaintiff's attorney's fees for the most recent filings as explained in more detail below.

### B. Attorney's Fees

As mentioned above, the parties filed a Joint Status Report, outlining Plaintiff's attorney's fees incurred in relation to the two defaults that have been entered against Defendant. Specifically,

---

[1] The Court's Order directing Defendant to retain new counsel was mailed to two different addresses, neither of them was returned. [Doc. 45].

the parties state that the Court awarded $9,146.00 with respect to the first entry of default. On December 4, 2020, Plaintiff's counsel submitted an invoice to Defendant setting forth Plaintiff's claim for additional attorney's fees incurred in relation to the most recent default litigation and for the interest on the prior award of attorney's fees. The invoice for the new attorney's fees totals $6,479.00, and the interest claimed on the past due amount is $1,570.00. Thus, Plaintiff claims a total amount of $17,195.60.

As mentioned above, Plaintiff requests that Defendant pay the previous award of $9,146.00 in a lump sum. In addition, Plaintiff requests that Defendant pay the interest on the previous award ($1,570.00) and the attorney's fees for the second default ($6,479.00) within thirty (30) days. Plaintiff argues that Defendant should have already been making efforts to pay the attorney's fees that were previously awarded and that all businesses have been affected in some way by the pandemic. Plaintiff further states that the first default occurred before the pandemic. Plaintiff states that it is not willing to accept satisfaction of the attorney's fees and interest claimed through a payment plan of $1,000.00 per month because it continues to pay its own attorneys on a timely basis while Defendant continues to pay other expenses to third parties.

Defendant requests, and has filed a Motion [Doc. 61], that it be permitted to pay such fees on a monthly basis of $1,000.00 per month. Defendant states that it does not have the financial ability to Plaintiff in a lump sum. Defendant explains that due to the pandemic, it has not been able to begin its business as planned, and therefore, it has no income whatsoever from business operations. Instead, Defendant asserts that it is paying monthly lease payments and other businesses expenses without receiving an income from business operations. In addition, Defendant states that the litigation has caused a number of investors to get cold feet. Finally, Defendant states that it has incurred two separate retainers for attorney's fees in this litigation.

Defendant sent Plaintiff a check in the amount of $1,000.00 on December 9, 2020, and intends to send another check on or before January 11, 2021. Defendant states that it is willing to increase the monthly amount if and when it has funds available through business operations or capitalization investments.

Further, Defendant stresses that it has not actually used the trademark at issue in this litigation and does not have any immediate intention to do so, even if it is able to begin business operations. Defendant acknowledges the necessity of paying the attorney's fees ordered by the Court and will do so within its limited ability. In support of its position, Defendant filed the Second Declaration of C. Kyle Spurlock, III [Doc. 61-1].

Plaintiff responded [Doc. 62] in opposition to the Motion, arguing that Defendant made no effort to satisfy the Court's previous award of attorney's fees and costs. Plaintiff states that it has significant concerns that Defendant will continue to disregard the Court's Orders and will not meet its obligations to pay Plaintiff. While Plaintiff maintains that the default judgment should be entered, Plaintiff objects to Defendant's proposed payment plan because the plan would not satisfy Defendant's obligations within a reasonable amount of time. Plaintiff also argues that Defendant continues to actively participate as a plaintiff in an opposition proceeding before the Trademark Trial and Appeal Board.

In the present matter, Defendant does not appear to dispute the total amount requested by Plaintiff.[2] Instead, the primary dispute appears to be whether Defendant should pay in a lump sum versus making monthly payments. Given Defendant's claim that it does not have the financial

---

[2] The Court notes that Plaintiff's total amount of $6,470.00 incurred related to Defendant's second default appears to be reasonable. Plaintiff states that it is willing to provide its itemization of fees to defense counsel if so ordered. [Doc. 60 at 2]. Should Defendant question the reasonableness of these fees, Plaintiff shall provide its itemization to defense counsel.

ability to pay the sanctions, the Court recommends that Defendant be permitted to pay in monthly payments. While the Court will not recommend a monthly amount without having the specific information regarding Defendant's financial ability to make said payments, the Court recommends that the parties have another meet and confer to agree on a monthly payment plan so that the attorney's fees and interest can be paid by a date certain. The Court further recommends that Plaintiff be permitted to take discovery on Defendant's past and future financial ability to pay the award, should Plaintiff have questions regarding this issue. *Davis v. Detroit Downtown Dev. Auth.*, No. 17-CV-11742, 2020 WL 3097262, at *1 (E.D. Mich. June 11, 2020) (explaining that the court issued an order permitting defendants to take discovery regarding plaintiff's ability to pay the sanctions). Finally, the Court recommends that the parties file another joint status report with respect to the results of their meet and confer within thirty (30) days of any order disposing of the instant Motions.

Accordingly, the Court **RECOMMENDS** Defendant's Motion to Pay Attorney Fees by Installments **[Doc. 61]** be **GRANTED IN PART**. The Court recommends that Defendant be permitted to pay in monthly installments, but the Court recommends that the parties meet and confer to determine the appropriate monthly amount so that all monies due can be paid by a date certain.

### III. CONCLUSION

Accordingly, for the reasons set forth above, Court **RECOMMENDS**[3] that Plaintiff's Motion for Default Judgment [**Doc. 48**] be **DENIED AS MOOT**, Defendant's Motion to Set Aside

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous,

Default [**Doc. 52**] be **DENIED AS MOOT**, Defendant's Amended Motion to Set Aside Default be **GRANTED** [**Doc. 53**], and Defendant's Motion to Pay Attorney Fees By Installments [**Doc. 61**] be **GRANTED IN PART AND DENIED IN PART.**

Respectfully submitted,

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge

---

conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

15